FILED
2022 Sep-09 PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **DR. EDWARD L. JONES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No.: 5:16-cv-00326-MHH** |
| **DR. ANDREW HUGINE, JR., et al.,** | } | |
| | } | |
| **Defendants.** | } | |
| | } | |
| | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In 2016, Dr. Jones, a tenured professor at Alabama A&M, sued the university and several university employees after A&M sent him an "intent to terminate" letter. Dr. Jones asserted several § 1983 claims against the defendants. Though Dr. Jones focused his efforts on his due process claim to compel A&M to give him a full hearing concerning the grounds for his termination, Dr. Jones included two Fourth Amendment unlawful search and seizure claims in his complaint. (Doc. 1, pp. 1, 21-23). In 2017, the Court dismissed Dr. Jones's Fourth Amendment claims with prejudice. (Doc. 61, pp. 4-5). A short time later, the Court dismissed the entire action for failure to prosecute after Dr. Jones failed to comply with an order to amend his complaint. (Doc. 68, p. 1).

Pursuant to Rules 60(b)(6) and 60(d)(3) of the Federal Rules of Civil Procedure, Dr. Jones now asks the Court to vacate its "February 16, 2017 order insofar as it dismissed Dr. Jones'[s] Fourth Amendment claim for unlawful search," to allow him to amend his Fourth Amendment claims, and to consolidate this action with case number 5:17-cv-01723-MHH. (Doc. 82, pp. 1-2). This opinion addresses Dr. Jones's requests. The Court first discusses the general standards for relief pursuant to Rule 60 and then describes the procedural history of this case. Finally, the Court applies the legal standards relevant to Dr. Jones's motion to the record in this case.

## I.

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for several enumerated reasons or "any other reason that justifies relief." FED. R. CIV. P. 60(b). "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1). Rule 60(b) "does not limit a court's power to . . . set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(3).[1]

---

[1] The defendants argue that the Court should construe Dr. Jones's motion as a Rule 60(b)(3) motion rather than a Rule 60(b)(6) motion and hold that the motion is barred by the one-year limitation in Rule 60(c)(1). (Doc. 90, p. 8). Under Rule 60(b)(3), a court may set aside a judgment for "(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3). Dr. Jones has not framed his motion as a Rule 60(b)(3) motion, (Doc. 91, p. 6), and the Court will not deem the motion a Rule 60(b)(3) motion.

## II.

As noted, Dr. Jones brought this action to blunt Alabama A&M's efforts to terminate his employment. Dr. Jones tried to compel Alabama A&M to provide a termination hearing; he alleged that the university had deprived him of due process. (Doc. 1, pp. 12-21, 23). Dr. Jones asserted that evidence on which A&M relied to terminate him was obtained through an improper search of his "personal electronic data and records" by Brian Ruble, an A&M police officer. (Doc. 1, pp. 2, 21, ¶¶ 3, 52). Dr. Jones alleged:

> 52. Defendant Ruble's search of Dr. Jones' personal electronic data and records constituted an unlawful search without any cause, much less, did said defendant demonstrate any probable cause. All defendants and AAMU ratified and adopted defendant Ruble's acts as their own.
>
> WHEREFORE, premises considered, the Plaintiff prays this Court will enter a judgment in favor of the plaintiff, award the plaintiff compensatory, punitive, declaratory and injunctive relief, attorney's fees and such other relief as is just and appropriate.

(Doc. 1, pp. 21-22, ¶ 52). Expanding on his allegation regarding probable cause, Dr. Jones also alleged:

> 54. Defendant Ruble's seizure of Dr. Jones' property was unlawful and made without probable cause and with an invalid warrant in violation of Dr. Jones' Fourth Amendment Constitutional right to be free from unlawful searches and seizures. All defendants and AAMU ratified and adopted defendant Ruble's acts as their own.

(Doc. 1, p. 22, ¶ 54). In his complaint, Dr. Jones provided no other details about the alleged unlawful search and seizure.

After he filed his complaint, Dr. Jones filed a motion for a temporary restraining order and a preliminary injunction "enjoining the defendants from terminating" him "without proper notice and hearing." (Doc. 9, p. 4). In the March 15, 2016, affidavit that he filed in support of his request for injunctive relief, Dr. Jones attested that he did not "have any information about the basis for the charges" the university had brought against him. (Doc. 9-1, p. 2, ¶ 3). But Dr. Jones's attorney attached to his brief in support of Dr. Jones's request for injunctive relief a January 14, 2016, "Intent to Terminate" letter addressed to Dr. Jones. In the letter, A&M explained: "[t]he cause for termination is gross professional misconduct. You are charged with both using University resources to view obscene materials and the production and/or creation of obscene materials. The behaviors which are the basis of these charges occurred on university property during duty hours." (Doc. 10-1, p. 1). In a March 10, 2016, letter of termination, A&M informed Dr. Jones that he was terminated immediately because "[t]here is convincing evidence that you have engaged in sexual conduct below minimum standards of professional integrity and misused University computing/electronic assets in gross violation of well-established University policy." (Doc. 10-4, p. 6).

In support of their opposition to Dr. Jones's request for early injunctive relief, A&M and the individual defendants filed, among other things, an affidavit from Officer Ruble. (Doc. 15-5). In his affidavit, Officer Ruble explained:

4.     I became familiar with Plaintiff Dr. Edward Jones . . . through my work as an Investigator with Alabama A&M.  I became aware that Alabama A&M's Property Manager, Jeff Robinson, filed a police report concerning missing computers, including an Alabama A&M laptop issued to Plaintiff.  As a result of that report and after obtaining a search warrant, Alabama A&M's Police Department and the Huntsville Police Department executed a search warrant on Plaintiff's residence.  On February 12, 2016, law enforcement located, seized and secured a Hewlett Packard 65606 laptop computer (serial number 4C21320G8M) with an Alabama A&M property tag (number AMU000689) and logo.

5.     A computer forensics expert, Mike Canfield, examined the Alabama A&M laptop and determined three (3) obscene and pornographic videos had been downloaded to the laptop.  I personally viewed all three[](3) videos for the purpose of reporting my findings to the University.  One video depicts Plaintiff masturbating and showing off his penis on Alabama A&M property.  A second video depicts Plaintiff receiving oral sex from a young male on Alabama A&M property.  (Id.).  Finally, the third video depicts Plaintiff receiving oral sex from another young male on Alabama A&M property.  A true and correct copy of my confidential memorandum concerning the videos located on the Alabama A&M laptop in Plaintiff's possession is attached to this declaration as Exhibit A.

(Doc. 15-5, p. 3, ¶¶ 4-5) (emphasis omitted).[2]  The Court denied Dr. Jones's motion for injunctive relief because the Court found that Dr. Jones had not demonstrated a substantial likelihood of success on the merits and because the Court found that Dr. Jones had an adequate remedy in damages.  (Doc. 38).

With the help of a new attorney, Dr. Jones asked the Court to reconsider the order denying his request for injunctive relief.  (Doc. 41).  In support of his request,

---

[2] Two of the videos were recorded at Carver Complex on A&M's campus.  (Doc. 15-5, p. 6).

Dr. Jones submitted an October 2015 letter from A&M to him advising him that he had been placed on administrative leave because of administrative compliance issues. (Doc. 41-1, p. 1). He also filed a new affidavit. (Doc. 42-1). In this affidavit, Dr. Jones discussed the October 2015 letter and stated that he left his office the afternoon of October 13, 2015, only to be notified a short time later that A&M's Chief Information Officer and a locksmith were at his office to seize his computer and change the locks on his office. (Doc. 42-1, p. 3, ¶ 4).[3] Dr. Jones asserted that after A&M sent its "Intent to Terminate" letter in January 2016, the university "embarked upon a criminal investigation and Gestapo police tactics" against him and "procured a warrant for [his] arrest and a search warrant for [his] home, alleging theft of property." (Doc. 42-1, p. 4, ¶ 7). Dr. Jones acknowledged that the search warrant "was issued by a magistrate or judge with the City of Huntsville." (Doc. 42-1, p. 4, ¶ 7).[4] Dr. Jones indicated that he lived in the City of Huntsville and asserted that the A&M police did not have jurisdiction to execute a search warrant at his house. (Doc. 42-1, p. 5, ¶ 7). Dr. Jones did not mention the City of Huntsville police

---

[3] Dr. Jones contends that during the search of his office, A&M employees took not only university equipment but also jump drives that belonged to him, not the university. (*See, e.g.*, Doc. 78, pp. 7, 11-12). A&M contends that a thumb drive containing elicit pictures was attached to a university computer. (Doc. 78, p. 13).

[4] Dr. Jones's attorneys later confirmed that in February of 2016, a magistrate judge in Huntsville issued a search warrant for Dr. Jones's home in conjunction with a charge of theft of property. (Doc. 78, pp. 7, 9). At a February 2017 hearing in this matter, counsel for Dr. Jones explained that they had the inventory for the items seized in conjunction with that search warrant. (Doc. 78, pp. 8-10).

officers who Officer Ruble attested accompanied him to Dr. Jones's house to execute the search warrant.  (Doc. 15-5, p. 3, ¶ 4).

In his affidavit, Dr. Jones asserted that the university searched his home and seized his property "for clandestine reasons to build a case against [him] that had absolutely nothing to do with the reasons" Provost Daniel Wims gave for placing him on administrative leave.  (Doc. 42-1, p. 5, ¶ 7).  Dr. Jones stated that his termination was not based on incompetence (for which he was placed on administrative leave with pay) or his alleged theft of A&M property (for which he was arrested on criminal charges), but on sexual misconduct.  (Doc. 42-1, p. 6, ¶ 9).  According to Dr. Jones, the defendants:

> unlawfully searched and seized [his] personal property from [his] home.  Among said property are video recordings, an old personal Apple IPhone 4 that was located in [his] bedroom dresser drawer, and an old broken A & M issued laptop located in [his] closet. In [his] opinion, the search warrant was a ruse for something more sinister because the University police officers, in executing the search, stumbled upon a video of a sexual nature from a video camera located in [his] nightstand drawer.  The video recorder was [his] personal property.  It was not the property of Alabama A & M University.  Nonetheless, the officers sat and watched the video tape that was in the recorder.  [He] know[s] this because [he] later discovered the video camera plugged into the electrical outlet . . . . They then took the video tape out of the camera and took it with them, having viewed the contents. There is no nexus between the video recording contents and the alleged theft of property charge that Alabama A & M University has leveled against [him]. Indeed, there is no nexus between the video contents and the reasons articulated by Provost Wims when he initially placed [Dr. Jones] on administrative leave with pay in October 2015. [Dr. Jones] submit[s] that defendants have manipulated the unlawfully seized

video recordings, [his] personal property, so as to manufacture a case of terminating [him] because of [his] sexual orientation.

(Doc. 42-1, pp. 6-7, ¶ 9).

In February of 2017, the Court held a hearing regarding Dr. Jones's motion for reconsideration of his request for a temporary restraining order and preliminary injunction. During the hearing, the Court addressed Dr. Jones's Fourth Amendment claims against A&M and the individual defendants. The Court stated that Dr. Jones's complaints about the execution of the state search warrant were an evidentiary matter in the ongoing criminal prosecution against Dr. Jones and involved state law enforcement officers. (Doc. 78, pp. 39-40). The Court dismissed Dr. Jones's Fourth Amendment claims with prejudice. (Doc. 78, pp. 39-40; *see also* Doc. 61, pp. 4-5).[5]

Following the hearing, the Court issued an eight-page order formally denying Dr. Jones's motion for reconsideration. (Doc. 61). At the conclusion of the order, the Court ordered A&M to give Dr. Jones another opportunity to engage in the university's grievance process to challenge his termination. The Court explained:

> The March 10, 2016 notice of termination is the notice pursuant to which Dr. Jones was terminated. (Doc. 15-2, pp. 84-85) (stating that

---

[5] Pursuant to *Younger v. Harris*, a federal district court should abstain from addressing an issue or a claim "when the federal proceeding will intrude on an ongoing state criminal proceeding." *Watson v. Fla. Jud. Qualifications Comm'n.*, 618 Fed. Appx. 487, 489 (11th Cir. 2015) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). "For *Younger* abstention to apply, state judicial proceedings must be ongoing, the proceedings must implicate important state interests, and the federal plaintiff must have an adequate opportunity to raise constitutional challenges in the state proceedings." *Watson*, 618 Fed. Appx. at 490.

the university terminated Dr. Jones "effective immediately"). In that notice, the university provided four grounds for immediate termination: "convincing evidence" that Dr. Jones "engaged in sexual conduct below minimum standards of professional integrity;" misuse of the university's electronic equipment; failure to respond to the January 2016 notice of intent to terminate; and elimination of the right to grieve, per the faculty handbook, because Dr. Jones instituted legal action against the university. (*Id.*). With respect to immediate terminations, the university's faculty handbook states:

> Faculty, including tenured faculty, may be terminated after other disciplinary measures fail or when first time incidents occur that are of a nature that the University, in its sole discretion, deems necessary for immediate termination. Cause for immediate termination is defined as gross professional misconduct or serious failure of a faculty member to discharge his or her obligations to the University. Adequate cause may include but is not limited to . . . conduct below minimum standards of professional integrity . . . or other good and adequate just causes.

(Doc. 15-2, p. 27). The handbook also states that after the university provides notice of immediate termination, the university must give an employee "an opportunity to submit any information they wish to be considered in reaching a determination concerning whether disciplinary action should be taken and, if so, which disciplinary procedure will be exercised." (*Id.*).

The university provided Dr. Jones a post-termination opportunity to participate in a grievance proceeding. Dr. Jones declined the opportunity because the university did not allow Dr. Jones to examine the computer equipment at issue; however, the university did allow Dr. Jones to view the videotape that forms that basis of the university's finding that Dr. Jones "engaged in sexual conduct below minimum standards of professional integrity." According to evidence in the record, the video recordings depict Dr. Jones in a university classroom engaging in sexual conduct on two separate occasions with two different men. Each of the men recorded on the videotape is approximately 20 years old. (Doc. 15-2, pp. 79-80).

Pursuant to the faculty handbook, the Court directs the university to give Dr. Jones an opportunity to submit any information he wishes the university to consider with respect to the university's finding that that [sic] Dr. Jones "engaged in sexual conduct below minimum standards of professional integrity." Dr. Jones must submit any information that he wishes the university to consider on or before February 28, 2017. The university shall evaluate the information that Dr. Jones provides and, on or before March 14, 2017, the university shall inform Dr. Jones in writing whether the information that he provided changes the university's termination decision or requires further proceedings.

Upon receipt of the university's written response, Dr. Jones's attorneys shall evaluate the response and decide how they wish to proceed. If they wish to proceed with this action, then on or before March 28, 2017, Dr. Jones shall file an amended complaint that states, in separate counts, the claims that Dr. Jones wishes to pursue against each defendant who Dr. Jones names in the amended complaint. In naming defendants in the amended complaint, consistent with their obligations under Rule 11, counsel for Dr. Jones shall consider the immunity defenses available to the various defendants named in the original complaint and name in an amended complaint only those defendants against whom counsel believes, in good faith, Dr. Jones may proceed.

(Doc. 61, pp. 5-7).[6]  As the Court explained in a subsequent hearing, the Court's

rationale for this order was simple:  one of the four grounds A&M stated for Dr.

Jones's termination was that Dr. Jones "engaged in sexual conduct below minimum

standards of professional integrity."  Because that alleged conduct was an adequate

independent basis for termination, if Dr. Jones had no evidence to refute A&M's

---

[6] Early in this case, Dr. Jones and his attorney reviewed the videos of conduct that form the basis of A&M's assertion that Dr. Jones engaged in sexual misconduct on campus.  (Doc. 78, p. 14).

evidence that he engaged in sexual conduct on university property, then his efforts at reinstatement were futile.  (Doc. 71; *see also* Doc. 78, pp. 32-35).

Rather than comply with the Court's instruction, Dr. Jones's attorneys filed a request for discovery regarding forensic examinations of the computer(s) and jump drives onto which Dr. Jones allegedly downloaded explicit materials.  Dr. Jones's attorneys also sought evidence of other university employees who A&M terminated for theft or misappropriation of property, sexual misconduct, or moral turpitude.  (Doc. 64).  The requested discovery was geared more towards the Title VII discrimination claim that Dr. Jones was pursuing before the EEOC than his due process claim for reinstatement.  (Doc. 69, pp. 8-9).  Just over one month after Dr. Jones requested this discovery, in April of 2017, the Court dismissed his remaining claims for failure to comply with a court order.  (Docs. 68, 71).

Again, Dr. Jones asked the Court to reconsider its decision.  (Docs. 69, 70).  Dr. Jones argued, in part, that A&M still had not returned the personal property that it seized from him.  (Doc. 70, pp. 13-14).  In March of 2018, the Court denied Dr. Jones's motion because he did not provide new evidence or new arguments to support his request for relief.  (Doc. 75).  In November of 2018, Dr. Jones's attorney notified the Court by email that Dr. Jones's state criminal proceeding was concluded.  (Doc. 76-1, p. 1).  The Court placed the message in the record but did not act on it

because the Court already had dismissed the action and denied Dr. Jones's request for reconsideration of the dismissal order. (Docs. 68, 75, 76, 77).

On February 23, 2022, Dr. Jones asked the Court to vacate the dismissal of his Fourth Amendment claims, to add five defendants to the claims, and to consolidate those claims with his Title VII action against A&M, Case No.: 5:17-cv-1723-MHH. (Docs. 79, 82). In his Title VII action, Dr. Jones contends that A&M offered several reasons for his termination in 2016, all of which were pretext for discrimination based on his sexual orientation. (Case No.: 5:17-cv-1723-MHH, Doc. 22). Dr. Jones's Fourth Amendment claims are intertwined with his theory of pretext. Because the Court dismissed Dr. Jones's Fourth Amendment claims in this case with prejudice, Dr. Jones may not amend his Title VII complaint to add a Fourth Amendment claim, hence Dr. Jones's effort to revive his Fourth Amendment claims in this § 1983 action and to consolidate this § 1983 action with his Title VII action. Dr. Jones's proposed first amended complaint in this action contains a plausible Fourth Amendment violation; the defendants do not argue otherwise. (Doc. 82-3). Therefore, the Court must consider whether Dr. Jones may use Rule 60 to revive his Fourth Amendment claims in this action.

## III.

The Court begins its analysis of Dr. Jones's motion to vacate by recognizing that it erred when it dismissed Dr. Jones's Fourth Amendment claims for damages

with prejudice.  The Court does not believe it erred in abstaining from hearing Dr. Jones's Fourth Amendment claims pursuant to *Younger v. Harris* because the propriety of the search of Dr. Jones's home was an evidentiary issue for the state court presiding over the pending criminal charge against Dr. Jones.  In his state criminal case, pursuant to the Fourth Amendment, Dr. Jones could have moved to suppress the evidence that state law enforcement officers and A&M Officer Ruble gathered in a search of his home.  Dr. Jones had an adequate state forum to challenge the evidence against him.

But in *Watson*, the Eleventh Circuit held that while a district court in a civil action may dismiss a plaintiff's claims for injunctive and declaratory relief as those claims relate to a state search warrant in a pending state criminal proceeding, a district court may only stay its proceedings with respect to a Fourth Amendment claim for damages.  A district court may not dismiss a claim for damages for an alleged violation of an individual's Fourth Amendment rights in connection with a state criminal proceeding because damages are not available in the state proceeding. *Watson*, 618 Fed. Appx. at 491; *see Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) ("[T]he District Court had no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding.  In reversing the District Court's dismissal of the claims for damages and attorney's fees, the Court of Appeals applied the Third Circuit rule that requires a District Court to stay, rather

than to dismiss, federal claims that are not cognizable in the parallel state proceeding.  The Third Circuit rule is sound. It allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts to assume  jurisdiction where jurisdiction properly exists.") (internal citations and footnotes omitted).  Consequently, because the state criminal charge against Dr. Jones was pending in February 2017, in February 2017, the Court should have stayed his Fourth Amendment claims to the extent he pursued damages and other monetary relief for the alleged constitutional violations.

Though it does not excuse the Court's error, the  Court recognizes that if it had not dismissed Dr. Jones's Fourth Amendment claims in February 2017, the Court would have resolved those claims in April 2017 when the Court dismissed Mr. Jones's remaining claims for his refusal to comply with court orders.  Following the April 2017 dismissal of this action, Dr. Jones did not appeal to challenge the dismissal of his Fourth Amendment claims with prejudice or the dismissal of the balance of his claims for failure to follow court orders.  Instead, Dr. Jones shifted his focus to his separate Title VII action against the A&M defendants.  Dr. Jones may not use a Rule 60(b) motion as a substitute for appeal.

Indeed, when evaluating a Rule 60(b)(6) motion, a court may consider several factors, including:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that

the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether – if the judgment was a default or a dismissal in which there was no consideration of the merits – the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether – if the judgment was rendered after a trial on the merits – the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) (citing *U.S. v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962)).[7]  A party seeking relief under Rule 60(d)(3) must establish fraud on the court, a high bar.

> Fraud upon the court should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

*Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985) (internal quotation marks omitted).  Rule 60(d)(3) rests on equitable principles.  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), *overruled on other grounds*, *Standard Oil Co. of Cal. v. U.S.*, 429 U.S. 17 (1976).

---

[7] In *Bonner v. City of Prichard, Alabama*, the Eleventh Circuit Court of Appeals adopted as binding precedent decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.  661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

*Hazel-Atlas* illustrates the variety of fraud that supports a request for relief from judgment under Rule 60(d)(3).  In that case, to support a pending patent application, "certain officials and attorneys of Hartford determined to have published in a trade journal an article signed by an ostensibly disinterested expert" lauding the device for which Hartford sought a patent.  *Hazel-Atlas*, 322 U.S. at 240. The article was published; the article was placed in the record before the Patent Office; and the Patent Office eventually granted the patent application.  *Hazel-Atlas*, 322 U.S. at 240-41.

Several months after the Patent Office granted the application, Hartford sued Hazel-Atlas for patent infringement.  *Hazel-Atlas*, 322 U.S. at 241.  The district court found that Hazel-Atlas had not infringed on Hartford's patent, but the Circuit Court of Appeals reversed, "holding the patent valid and infringed."  *Hazel-Atlas*, 322 U.S. at 241.  In so doing, the Circuit Court of Appeals "[q]out[ed] copiously from the article to show that labor organizations of practical workmen recognized the new and differentiating elements of the gob feeding patent owned by Hartford . . . ." *Hazel-Atlas*, 322 U.S. at 241 (internal quotation marks omitted). Hazel-Atlas did not file a petition for rehearing, and the Circuit Court of Appeals remanded the case for the district court to enter a final judgment in favor of Hartford.  *Hazel-Atlas*, 322 U.S. at 253.

Several years later, Hazel-Atlas "presented to the Circuit Court of Appeals its petition for leave to file in the District Court a bill of review" based on false information in the trade journal article that Hartford submitted in support of its patent application. *Hazel-Atlas*, 322 U.S. at 253. The Circuit Court of Appeals denied relief, and Hazel-Atlas appealed to the Supreme Court. *Hazel-Atlas*, 322 U.S. at 252. The Supreme Court held that equity demanded relief for Hazel-Atlas. The Supreme Court stated:

> Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.
>
> . . .
>
> Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Id*. at 245-46.

To establish fraud on the court in this case, Dr. Jones asserts that A&M's attorneys engaged in fraud when obtaining state search warrants and then defrauded

this Court in urging the Court to dismiss Dr. Jones's Fourth Amendment claims. (Doc. 82, p. 11-12).   Dr. Jones contends that "search warrants issued for the exclusive purpose of conducting a theft investigation" of him were "repurposed and used to conduct searches focused on investigating Dr. Jones'[s] personal life and other matters unrelated to theft."  (Doc. 82, p. 3).  Dr. Jones relies on evidence that demonstrates that between March 2016 and June 2016, A&M's General Counsel met with the university's investigation team "to discuss and review new evidence," which "included text messages from Dr. Jones['s] iPhone from 2011-2012," (Doc. 82-1, p. 11; Doc. 82, p. 4), but the "search warrants to retrieve Dr. Jones['s] text messages from his iPhones for the University's theft investigations were not obtained until July 12, 2016," (Doc. 82, p. 5).  Additionally, Dr. Jones produced an affidavit from a former campus police officer who stated that in May 2015, A&M personnel questioned him about his "interactions with Dr. Jones," (Doc. 82-2, p. 2, ¶ 6), and that the meeting was attended by "an attorney for the University; and a second male attorney who stated he represented the University," (Doc. 82-2, p. 2, ¶ 3).[8]  Based on this evidence, Dr. Jones argues that "Defendants' counsels oversaw and perhaps even directed the misuse of warrants to obtain evidence for post-termination investigations unrelated to theft."  (Doc. 82, p. 5).

---

[8] According to Dr. Jones, the affiant "indicated that the unidentified male attorney referenced in his affidavit . . . was likely someone from" the private firm representing Alabama A&M in this action.  (Doc. 82, pp. 4-5).  There is no statement to this effect from the affiant in the record.

The evidence Dr. Jones offers to support his fraud on the court theory falls short for several reasons. First, Dr. Jones has not demonstrated that A&M launched a bogus investigation into alleged theft by Dr. Jones as a ploy to investigate Dr. Jones's sexual conduct. As Dr. Jones's evidence demonstrates, Officer Ruble submitted to a state court magistrate an affidavit to support a search warrant for Dr. Jones's cell phone to explore evidence of criminal conduct, including the crime of theft. (Doc. 82-4). Dr. Jones does not argue that the magistrate judge erred in finding probable cause to issue a search warrant, and Dr. Jones was convicted of the crime of theft. Thus, A&M's theft investigation was legitimate.

Second, in his affidavit, Officer Ruble disclosed that the university's investigation into theft was linked to other investigations that began when the university "placed Dr. Jones on administrative leave in the Fall of 2015." (Doc. 82-4, pp. 4, 10). Officer Ruble disclosed to the state court magistrate that after A&M placed Dr. Jones on administrative leave, the university secured his A&M work computer and attached thumb drives and found on them "images of nude males" that the university reported to its Department of Public Safety. (Doc. 82-4, pp. 4, 10). Officer Ruble provided several details about the university's investigation of the illicit images found on Dr. Jones's work computer equipment and explained that as a consequence of the forensic examination of the computer and thumb drives, A&M "also learned of the possible theft of computers, Ipads, and misapplication and

money laundering of [A&M] funds through fraudulent channeling of university resources by Dr. Edward Jones." (Doc. 82-4, pp. 4, 10). Officer Ruble stated that he believed that data on Dr. Jones's iPhone would supply "records of theft of property, money laundering activities, and other crimes to include invasion of privacy . . . ." (Doc. 82-4, pp. 6, 12). Thus, A&M disclosed to the state court magistrate that the university was investigating not only possible theft by Dr. Jones but also other potential criminal conduct. Given these disclosures in Officer Ruble's affidavit, Dr. Jones has not demonstrated that A&M "tamper[ed] with the administration of justice." *Hazel-Atlas*, 322 U.S. at 246.

Third, the Court, without prompting from the attorney for A&M, explored the status of Dr. Jones's criminal proceedings before deciding to dismiss Dr. Jones's Fourth Amendment claims. At the outset of the February 13, 2017 motions hearing, the Court asked Mr. Jones's attorney: "what is the status of any criminal proceedings related to Dr. Jones?" (Doc. 78, p. 5). The Court also asked a series of questions about computer equipment that the university took from Dr. Jones's office and that police obtained from Dr. Jones's house pursuant to a search warrant. (Doc. 78, pp. 6-12). Ultimately, the Court dismissed Dr. Jones's Fourth Amendment claims because the Court determined that Dr. Jones's arguments about "evidence that was seized in violation of law" was an evidentiary issue related to the state search warrant in Dr. Jones's criminal case that should be resolved in the criminal case. (Doc. 78,

p. 39).  Again, had the Court not dismissed Dr. Jones's Fourth Amendment claims in February of 2017, the Court no doubt would have dismissed the claims two months later when the Court dismissed the balance of Dr. Jones's claims because his attorneys refused to comply with court orders.

Thus, because the criminal investigation into Dr. Jones's misappropriation of funds was legitimate and because the Court concluded, without prompting from the defendants' attorney, that the state criminal proceeding against Dr. Jones was the proper forum for him to challenge evidence obtained pursuant to the state search warrant, Dr. Jones has not established that dismissal of his Fourth Amendment claims was procured by fraud.

In support of his contention that A&M duped the Court into dismissing his Fourth Amendment claims, Dr. Jones cites A&M's attorney's representation during the February 13, 2017, hearing that Dr. Jones sought discovery as to the "box of documents . . . related to the theft of monies that were otherwise state funds that were collected by Dr. Jones under the guise, I believe, of student fees which actually formed the basis for the criminal charge which you heard about."  (Doc. 82, pp. 15-17) (internal quotation marks omitted).  Dr. Jones asserts that when he obtained the "box of documents" in discovery in his Title VII action, he discovered that the box "contains documents wholly divorced from any criminal theft investigation or the University's decision to terminate Dr. Jones on March 10, 2016."  (Doc. 82, p. 3).

Based on A&M's attorneys' involvement in the termination investigation, Dr. Jones argues that counsel for the defendants knew what the "box of documents" contained and deliberately misrepresented its contents to the Court. (Doc. 82, p. 3).

Even if the Court assumes that the "box of documents" mentioned briefly during the February 13, 2017, hearing is the box A&M produced to Dr. Jones more than four years later, and even if the Court assumes that A&M's attorney at the February 13, 2017, hearing knew exactly which documents were contained in the box, this evidence is insufficient to establish fraud upon the Court for purposes of Rule 60(d)(3). A lone statement made to the Court regarding a due process claim does not rise to the level of a deliberately planned and carefully executed scheme that warrants upending a five-year old dismissal of Dr. Jones's Fourth Amendment claims, especially when the Court did not consider the statement regarding the box in dismissing Dr. Jones's Fourth Amendment claims.

And even if the Court were to conclude that the A&M defendants or their attorneys misled the Court, the Court would not automatically provide relief to Dr. Jones under Rule 60(d)(3). The Court would have to consider whether Dr. Jones's "own negligence or oversight . . . contributed to the original judgment . . . ." *Booker v. Dugger*, 825 F.2d 281, 284 (11th Cir. 1987). If so, "an independent action for relief is not proper unless the evidence which would establish injustice is practically conclusive." *Booker*, 825 F.2d at 284 (internal quotation marks and citations

omitted).  The Court also would have to consider Dr. Jones's transparency in this litigation.  Neither consideration favors Dr. Jones.

Dr. Jones's refusal to participate in A&M's grievance process caused the Court to dismiss his § 1983 claims in April of 2017, and the dismissal order would have encompassed Dr. Jones's Fourth Amendment claims had the Court not already dismissed those claims on February 13, 2017.  Moreover, Dr. Jones was not forthright in his submissions to the Court.  In support of his request for a temporary restraining order and preliminary injunction, Dr. Jones stated in a March 15, 2016, affidavit that he did not "have any information about the basis for the charges" the university had brought against him.  (Doc. 9-1, p. 2, ¶ 3).  But that is not so.  Dr. Jones's attorney filed with Dr. Jones's request for injunctive relief a January 14, 2016 "Intent to Terminate" letter addressed to Dr. Jones in which A&M stated: "[t]he cause for termination is gross professional misconduct.  You are charged with both using University resources to view obscene materials and the production and/or creation of obscene materials.  The behaviors which are the basis of these charges occurred on University property and during duty hours."  (Doc. 10-1, p. 1).  In a March 10, 2016, letter of termination, A&M informed Dr. Jones that he was terminated immediately because "[t]here is convincing evidence that you have engaged in sexual conduct below minimum standards of professional integrity and misused University computing/electronic assets in gross violation of well-

established University policy." (Doc. 10-4, p. 6). Dr. Jones's assertion in his affidavit that he did not "have any information about the basis for the charges" against him is disingenuous at best. Therefore, Dr. Jones is not entitled to relief under Rule 60(d)(3).

Rule 60(b)(6) is not a viable alternative for Dr. Jones. To revive his Fourth Amendment claims for damages, Dr. Jones could have appealed following the dismissal of this action in 2017, but he opted not to appeal. His nearly five-year delay in bringing his Rule 60(b)(6) motion counsels against relief because Dr. Jones could have raised the error in the Court's dismissal of his Fourth Amendment damages claims at any time; Dr. Jones did not need the information that he purportedly gained through discovery in his Title VII case to challenge the dismissal of is Fourth Amendment damages claims. Besides, Dr. Jones previously asked the Court to reconsider the dismissal of his claims in this action, and the Court denied his motion. (Docs. 69, 70, 75). In his most recent motion, Dr. Jones has offered a new twist on a previously-stated reason for relief, namely that the defendants still had not returned his personal property to him. (Doc. 70, pp. 13-14). But, as discussed, Dr. Jones's fraud theory is not persuasive.

The Court erred when it dismissed Dr. Jones's Fourth Amendment damages claims with prejudice, and the Court regrets the error. On another record, the error might suffice to permit relief under Rule 60(b)(6), but here, Dr. Jones cannot escape

the fact that his litigation strategy ultimately is to blame for the dismissal of his claims in this action.  Dr. Jones chose to include an inaccurate representation in his first affidavit in this case; he chose to refuse to follow court orders; and he chose not to appeal the dismissal of this case.  Against the backdrop of the policy favoring the finality of judgments, the 60(b)(6) factors weigh against Dr. Jones's request for relief.

## CONCLUSION

For the reasons stated above, the Court denies Dr. Jones's motion to vacate the judgment in this action.  (Docs. 79, 82).[9]

**DONE** and **ORDERED** this September 9, 2022.

_Madeline H. Haikala_
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[9] For purposes of this opinion, the Court has not considered whether in his Title VII action, Dr. Jones may use as circumstantial evidence of discriminatory intent alleged diversions from A&M policy or flaws in the state criminal process for which the defendants purportedly are responsible. Those are questions for Dr. Jones's Title VII action.